**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

GREGORY LIEBER, and
LORENA LIEBER,

    CASE NO. 15-cv-14157

    *Plaintiffs*,

    DISTRICT JUDGE THOMAS L. LUDINGTON
v.    MAGISTRATE JUDGE PATRICIA T. MORRIS

EVERBANK MORTGAGE
COMPANY,

    *Defendant*.
    /

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 26)**

### I.   RECOMMENDATION

For the reasons stated below, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment, (Doc. 26), be **GRANTED**, and that Plaintiffs' First Amended Complaint, (Doc. 12), be **DISMISSED**.

### II.   REPORT

#### A.   Introduction

This mortgage foreclosure action was originally filed in the Saginaw County Circuit Court, State of Michigan, and removed to this Court on October 13, 2015, by Defendant EverBank Mortgage Company ("EverBank"). (Doc. 1, Notice of Removal ¶ 1). United States District Judge Thomas L. Ludington referred this case to the undersigned Magistrate Judge for general case management on December 8, 2015. (Doc. 9).

1

On February 8, 2016, EverBank filed a motion to dismiss Plaintiffs' First Amended Complaint ("Complaint"). (Doc. 16). Plaintiffs responded on February 29, 2016, (Doc. 18), and Everbank replied. (Doc. 19). On June 24, 2016, I issued a Report and Recommendation ("R&R"), urging Judge Ludington to grant the motion in part—as to Plaintiffs' breach of contract claim—and deny the motion in part—as to Plaintiffs' Real Estate Settlement Procedures Act ("RESPA") claim.(Doc. 20). Judge Ludington adopted my R&R on July 28, 2016. (Doc. 21).

Thereafter, EverBank filed the instant Motion for Summary Judgment, (Doc. 26), on January 30, 2017. Plaintiffs responded on February 21, 2017, (Doc. 28), to which EverBank replied in early March, (Doc. 29). Therefore, the motion is ready for report and recommendation without oral argument. See E.D. Mich. LR 7.1(f)(1).

**B.     Background**

Plaintiffs' property is located at 8093 S. Raucholz Road, St. Charles, Michigan 48655. (Doc. 12, ¶ 8.) On or about May 13, 2015, Plaintiffs obtained a $153,000.00 loan from GNC Mortgage. (*Id.*) The loan was secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"). (*Id.*) On September 15, 2010, MERS assigned the mortgage to EverBank. (Doc. 16 at ID 87 & Ex. 2.) On June 11, 2014, EverBank assigned the mortgage to Green Tree Servicing LLC.[1] (*Id.* at ID 88 & Ex. 3). As of November 25, 2015, when the original complaint was filed in state court, Plaintiffs were

---

[1] The parties stipulated to the dismissal of Defendant, Ditech Financial LLC, formerly known as Green Tree Servicing LLC on January 22, 2013. (Doc. 13).

seeking to enjoin foreclosure. (Doc. 1 at ID 16). Since the Complaint also seeks to enjoin foreclosure, the Court assumes foreclosure has not yet occurred. (Doc. 12 at ID 64).

On March 29, 2013, Plaintiff Gregory Lieber faxed a handwritten note "to explain our hardship" to EverBank. (Doc. 28, Ex. A). Nearly a year later, in January 2014, he sent EverBank a letter dated January 16, 2014, describing his property, asking EverBank to "[p]lease treat this letter as a qualified written request under the Real Estate Settlement Procedures Act, Section 2605(e)," and explaining "I am the owner of the property noted above." (Doc. 18 at ID 176). He continued: "It is my belief that my 1st morgage [sic] loan contains RESPA, Truth in Lending, Regulatory, Federal, State, and Local violations that warrant a forensic audit before you file foreclosure proceedings against me. In order for my auditor to complete his review, I am requesting you provide me the following documents from my file":

- Application (Form 1003, Original & all documents submitted on my behalf used for underwriting decisions)
- Promissory Note or Line of Credit Agreement and any riders or addendums
- Rate Lock agreement
- Truth in Lending Disclosure (final, including itemization of amount financed)
- Notice of Right of Rescission or Right to Cancel
- HUD-1/1A Settlement Statement (final)
- Affiliated Business Arrangement Disclosures
- Morgage [sic] Insurance Certificate
- Underwriting and Transmittal Summary (Form 1008)
- Copy of Appraisal
- UD/UA Addendum to Uniform Residential Loan Application
- Deed of Trust/Morgage [sic] and any riders or addendums
- Good Faith Estimate
- Evidence of Insurance
- Closing Instructions/Letter to Settlement Agent

3

(*Id.*).[2] Responding to this letter, EverBank sent a letter on January 21, 2014 acknowledging receipt of Plaintiffs' letter, (Doc. 26, Ex. 8), a January 30, 2014 letter with copies of the Note, Truth in Lending Disclosures, HUD1, and Mortgage, (*Id.*, Ex. 9), and a February 7, 2014 letter with copies of the Note, Mortgage, and HUD-1 Settlement Statement, (*Id.*, Ex. 10).

Thereafter, Plaintiff Gregory Lieber sent a letter to the CFPB on March 15, 2014—later forwarded to EverBank—which identified his name and account number, and seemed in general to take issue with modifications of the original agreement, as well as how "Everhome [sic] even [came] into the picture." (Doc. 28, Ex. E). The CFPB letter also expressed surprise that "an escrow account statement . . . said [his] escrow account is [$]2058.80 short." (*Id.*). On March 26, 2014, the CFPB sent Plaintiff Gregory Lieber a notice that it "sent [his] complaint to the company for a response." (*Id.*). EverBank, meanwhile, had sent Plaintiffs an acknowledgement letter on March 21, 2014, (Doc. 28, Ex. F), which they followed up on April 14, 2014 with a letter to Michael M. Hall, their bankruptcy attorney. (Doc. 29, Ex. 1). In their response, EverBank details the history of the subject mortgage's origination and modification, explains that it understands Plaintiff's correspondence as "express[ing] his concerns regarding Everhome's [sic] servicing practices," but "assure[s]" him that EverBank "ha[s] serviced, and will continue to service, the loan according to applicable laws, regulations, and guidelines." (*Id.*). In addition, the

---

[2] The record copy of this and other handwritten notes proves difficult to read and illegible at points; I have transcribed its contents as reliably as possible, with help from both parties' briefs when provided.

letter explains that that the escrow account shortage was likely "the result of an increase in either the insurance or tax premiums," and that EverBank requests "payment for the shortage in a lump sum, or incorporate[s] the shortage into future monthly installments for collection." (*Id.*).

### C.     Summary Judgment Standard of Review

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will

appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the

6

evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### D. Analysis

Plaintiffs' Complaint alleges breach of contract and violation of the Real Estate Settlement Procedures Act ("RESPA"), 15 U.S.C. § 1601. (Doc. 12). Because Judge Ludington adopted my R&R and dismissed their breach of contract claim, the only surviving claim seeks relief under RESPA. As I discussed in that R&R:

> Under the RESPA claim, Plaintiffs . . . allege that despite "reasonable requests" from Plaintiffs, Defendant "failed to investigate irregularities or Plaintiff's [sic] dispute of the amount of the debt and failed to properly credit Plaintiffs' payments[.]" . . . Plaintiffs aver that they "have incurred damages including improper and late charges and the cost of legal counsel prior to, during and post-bankruptcy proceedings" and they pray the court "adjudge and declare the Plaintiffs rights to an accounting, adjustment of account and whatever dollar amount allowed by statute, up to and including all attorney fees allowed by statute."

(Doc. 20 at ID 212) (quoting (Doc. 12 at ID 65-66)) (internal citations omitted). In its Motion for Summary Judgment, EverBank posits three grounds entitling them to summary judgment on this claim: (1) "Plaintiffs' request for information was not a Qualified Written Request under RESPA as it did not relate to the servicing of the loan"; (2) "Plaintiffs received a response to their request for information even though it was not a Qualified Written Request"; and (3) "Plaintiffs have not suffered any actual damages caused by EverBank's purported actions and the only alleged damages are speculative at best." (Doc. 26 at ID 257). Because I find the former two arguments conclusive, I decline to reach Defendant's damages argument.

7

"As a remedial statute, RESPA is construed broadly to effectuate its purposes." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 720 (6th Cir. 2013). Under 12 U.S.C. § 2605(e)(1)(A) a borrower may submit a Qualified Written Request ("QWR") to its loan servicer for "information relating to the servicing of such loan." Servicing is defined as (i) "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts" and (ii) "making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

To be considered a QWR, the letter must identify the loan and "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error"—a Notice of Error QWR—"or provide[] sufficient detail to the servicer regarding other information sought by the borrower"—a Request for Information. *Id.* § 2605(e)(1)(B); *see also id.* §§ 1024.35(a), 1024.36(a). Of note, a request for an accounting has been held to be a valid QWR because "[a]n accounting of the loan (history of payments and future amounts due) does appear to relate to loan servicing." *Michel v. Deutsche Bank Trust Co.*, No. 1:10-cv-2375, 2012 U.S. Dist. LEXIS 134949, at *30 (E.D. Ca. Sept. 20, 2012); *see also Dowling v. Litton Loan Servicing, LP*, No. 2:05-CV-0098, 2006 U.S. Dist. LEXIS 87098, at *37-38 (S.D. Ohio Dec. 1, 2006) (finding Plaintiffs request was a QWR because it identified Plaintiff's name and account number and "requested 'an accounting of the various charges and payments applicable to the account' and further demanded validation of the debt"). A servicer must respond to a QWR, and failure to timely or adequately respond entitles a borrower to actual damages. *Id.* § 2605(f).

As I observed in my R&R, Plaintiffs did not explicitly mention any QWR in their Complaint, but nevertheless alleged that they "wrote letters to . . . Everhome [sic] seeking an accounting including an accounting of funds paid for escrow purposes and were not favored with a response," and that they "made reasonable requests upon [EverBank], and [EverBank] failed to investigate irregularities or Plaintiff's [sic] dispute of the amount of the debt and failed to properly credit Plaintiffs' payments . . . ." (Doc. 12 at ID 60, 65). These allegations ultimately shielded their complaint from dismissal pursuant to Federal Rule of Procedure 12(b)(6). But as I noted at the time, "[n]one of the letters allegedly sent . . . were attached to the Complaint; thus it is not possible to determine whether they were in fact QWRs." (Doc. 20 at ID 218). At the present summary judgment stage, however, three salient communications warrant attention: (1) the January 16, 2014 letter, (Doc. 18, Ex. A4 at ID 176); (2) the March 29, 2013 hardship letter, (Doc. 28, Ex. A); and (3) the March 15, 2014 CFPB letter, (Doc. 28, Ex. E).

Plaintiffs argue that the January 16, 2014 letter merits QWR status because "it is a request for information under the statute, it identifies the information requested and that the information is requested for an 'auditor' and there is no evidence that the Defendant did not deem the request to constitute a qualified written request." (Doc. 28 at ID 564). However, as Defendant correctly notes, the letter seeks information relating to the origination of the loan, not servicing of the loan. *Cf. Houston v. U.S. Bank Home Mortg. Wisconsin Servicing*, No. 10-13780, 2011 WL 1641898, at *4 (E.D. Mich. May 2, 2011) (explaining that "simply request[ing] a list of documents relating to [one's] loan" would not be a QWR); *Gates v. Wachovia Mortg., FSB*, No. 2:09-cv-02464, 2010 WL 2606511,

9

at *4 (E.D. Cal. June 28, 2010) ("Courts routinely interpret section 2605 as requiring a QWR to relate to the servicing of a loan, rather than the creation or modification of a loan."). To this, Plaintiffs suggest that "whether or not [Everbank] was treating the January 2014 letter as a qualified written request under the statute" creates a genuine issue of material fact, but the argument is unavailing. (Doc. 28 at ID 565). How a defendant *treats* a letter will not trigger a duty to respond under RESPA. *See, e.g.*, *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F.Supp.3d 526, 538 (E.D.N.Y. 2015) ("To plead a claim under the RESPA, plaintiff must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter—that the Court may determine if the letter qualifies as a QWR or notice of error."). For this reason, the January 16, 2014 letter is not a QWR.

The March 29, 2013 hardship letter likewise does not qualify as a QWR—its first sentence proclaims a design to "explain [Plaintiffs'] hardship," and nowhere does it identify the loan. (Doc. 28, Ex. A at 1); *see* 12 U.S.C. § 2605(e)(1)(B)(i) (providing that a QWR must "include[], or otherwise enable[] the servicer to identify, the name and account of the borrower"). Moreover, the letter spends its lines lamenting a loan modification, (Doc. 28, Ex. A at 3) ("I am to[o] pinched for money for what you guys 'forced' me to accept . . . ."), and thus lacks the ingredients of a QWR.

Unlike the March 29, 2013 and January 16, 2014 letters, the CFPB letter identifies Plaintiffs by name and account number, seeks answers relating to arrears in Plaintiffs' escrow account, and implies that they are not in fact behind on payments. (Doc. 28, Ex. E). It also, however, seems intended more to express disbelief and surprise (in a manner akin

to the March 29, 2013 hardship letter) as to the mechanism of their modification agreement and ownership of the debt—*see* (*id.*) (asking: "how did Everhome [sic] even come into the picture. The original one (I think) is MERS")—and does not provide details as to *why* they believe the account is in error aside from their general perception that "[s]omething's fishy here." (*Id.*); *see also* (*id.*) ("Fannie May [sic] holds my debt yet they've been sued in . . . 2011 for 200 billion, then were under federal conservatorship in mid 2008 [sic], then they just got sued again last 6-12 months in federal court for millions again. How can they still have anything to do with loan after all that stuff[?]"). The letter does not appear to be a QWR.

      Even generously construing the CFPB letter as a Notice of Error QWR—for it does not appear to seek any particular information—will not fend off summary judgment, for EverBank responded adequately to the inquiry. Under 12 U.S.C. § 2605(e)(2), a servicer must respond to a QWR "[n]ot later than 30 days" after receiving it. Where the QWR is a Notice of Error, and the servicer determines the account is correct "after conducting an investigation," the response must state "reasons for which the servicer believes the account of the borrower is correct as determined by the servicer," as well as "the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower . . . ." *Id.* § (2)(B)(i)-(ii). As the record shows, EverBank forwarded a response to Plaintiffs' CFPB letter within thirty days of receiving it, detailed how Plaintiffs' two previous loan modifications had altered the terms of the loan, and noted that their failure to make a payment on December 13, 2013 stemmed from

11

declining to accept the third loan modification offered to them, and thereby leaving their loan over three months delinquent. *See generally* (Doc. 29, Ex. 1).

Plaintiffs either cannot show that the sent EverBank a QWR, or they cannot show that EverBank failed to respond adequately, and in accordance with RESPA's terms, to their CFPB letter.

### III. CONCLUSION

For the above reasons, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment, (Doc. 26), be **GRANTED**, and that Plaintiffs' First Amended Complaint, (Doc. 12), be **DISMISSED**.

### IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140, 155; Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. Willis v. Sec'y of Health & Human Servs., 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d

1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 28, 2017                    S/ PATRICIA T. MORRIS
                                         Patricia T. Morris
                                         United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: March 28, 2017                     By s/Kristen Castaneda
                                         Case Manager